IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 13, 2015

**STATE OF TENNESSEE v. ADAM TODD TUCKER**

**Appeal from the Circuit Court for Lawrence County**
**Nos. 30857, 31527, 31539, 31540    Jim T. Hamilton, Judge**

**No. M2014-01931-CCA-R3-CD - Filed June 15, 2015**

The Defendant, Adam Todd Tucker, appeals the Lawrence County Circuit Court's order revoking his probation for his convictions for two counts of theft of property valued at $1000 or more but less than $10,000, theft of property valued at more than $500 but less than $1000, and promotion of methamphetamine manufacture and ordering his effective eight-year sentence into execution. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and TIMOTHY L. EASTER, JJ., joined.

Claudia S. Jack, District Public Defender, and R.H. Stovall, Jr., Assistant Public Defender, for the appellant, Adam Todd Tucker.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Senior Counsel; Brent Cooper, District Attorney General; and Gary M. Howell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 27, 2012, the Defendant pleaded guilty in case number 30857 to theft of property valued at $1000 or more but less than $10,000 and was sentenced to four years' probation after serving ninety days in confinement. On April 25, 2013, a probation violation report was filed, alleging that the Defendant failed to obtain employment or to provide documentation of an employment search, failed to report to his probation officer as scheduled during March 2013, failed to comply with the "ACRC and FSW" recommendation of inpatient treatment, had a positive drug screen for morphine on January 24, 2013, had a

positive drug screen for amphetamine, methamphetamine, cocaine, and morphine on April 4, 2013, and failed to pay supervision fees and court costs. On May 30, 2013, the trial court ordered a partial probation revocation and returned the Defendant to probation after he served ninety days in the county jail.

Also on May 30, 2013, the Defendant pleaded guilty to multiple offenses. In case number 31539, he pleaded guilty to theft of property valued at $1000 or more but less than $10,000, and he received a four-year sentence to be served on probation. The trial court also ordered the sentence be served consecutively to the four-year sentence in case number 30857. In case number 31540, he pleaded guilty to theft of property valued at more than $500 but less than $1000, and he received two years' probation. In case number 31527, he also pleaded guilty to promotion of methamphetamine manufacture and received four years' probation. As a result, the Defendant received an effective eight years' probation after serving ninety days in confinement for the probation violation and new charges.

On September 12, 2013, a probation violation report was filed relative to all four case numbers, alleging that the Defendant failed to obtain employment or to provide documentation of an employment search, failed to report to his probation officer as scheduled on June 25, 2013, failed to report during August 2013, and failed to pay fees and court costs. The report also alleged that on August 21, 2013, the Defendant was not home when a probation officer attempted to conduct a home visit and that the officer was told the Defendant was living with a girlfriend. On November 14, 2013, the probation violation report was amended and alleged that on August 2, 2013, the Defendant was indicted for burglary, felony theft of property, and criminal trespass. On November 27, 2013, the trial court found that the Defendant had violated his probation. It ordered the Defendant to serve six months in jail before being reinstated to probation. The Defendant did not appeal.

On April 24, 2014, another probation violation report was filed with the trial court, alleging that the Defendant failed to obtain employment or to provide documentation of an employment search, failed to report to his probation officer after serving six months in confinement for the previous probation revocation, and failed to pay fees and court costs. The report also alleged that the Defendant's residence could not be verified when a home visit was attempted on April 8, 2014. This probation violation report is the subject of the present appeal.

At the revocation hearing, Probation Officer Ladner testified that on September 27, 2012, the Defendant was placed on probation and that Probation Officer Nicely supervised the Defendant. On April 24, 2014, Officer Nicely filed a probation revocation report after the Defendant failed to report to her office and failed to provide a current address. Officer Ladner said that two home visits were attempted and that the first visit was attempted

approximately two months after the Defendant's release from serving time in confinement pursuant to a partial probation revocation. Her records reflected that the Defendant was released on February 13, 2014, and that the Defendant had not reported to the probation office since his release. The first home visit at the Defendant's reported residence was attempted because of his failure to report. She said that on April 16, 2014, the Defendant was located at a different address with his grandmother and girlfriend. She said April 16, 2014, was the Defendant's first contact with his probation officer since his release in February. She said Officer Nicely also had difficulty locating the Defendant in 2013.

Officer Ladner testified that the Defendant owed court costs and restitution and that the Defendant had never made a payment. She noted her records showed that in one of his cases, the Defendant owed $31,150. The Defendant had not provided receipts reflecting any payments, and he was required to provide his receipts. Office Ladner stated that this was the third probation violation allegation against the Defendant.

Officer Ladner testified that on February 16, 2013, the Defendant participated in an "ACRC" hearing to prevent another probation violation allegation. She said that as a result of the ACRC hearing, the Defendant was required to seek substance abuse treatment but that the Defendant did not comply. She said the Defendant had previously failed drug screens.

On cross-examination, Officer Ladner testified that the Defendant had not received any new criminal charges since his release from confinement on February 13, 2014. She agreed the violation report alleged technical violations but stressed the significance of the Defendant's failure to report to the probation office. She said that the Defendant would have been released after midnight on February 13 and that no one from the probation office would have talked to him at the jail. She said, though, the Defendant would have been instructed at the November 14, 2013 revocation hearing to report to the probation office immediately following his release.

Officer Ladner testified that the Defendant knew to go to the address listed on file with the probation office upon his release from confinement. Relative to the attempted home visit on April 8, 2014, Officer Ladner's records showed that no one answered the door at 1:25 p.m. She said that as a result, the Defendant's address could not be verified. She said that when the probation officer returned to the address on April 16, the Defendant, his friend, Rachel Brown, and his grandmother were present.

Officer Ladner testified that her usual procedure was to instruct defendants to report to the probation office the day following their release from confinement and that probation orders required defendants to report within seventy-two hours of their release. She noted the Defendant's previous experience with probation and said the Defendant knew to report to the

probation office when he was released on February 13, 2014. She said that if a defendant were released on a weekend, the defendant would have to contact his or her probation officer by telephone and report to the probation office on Monday.

Officer Ladner testified that the probation office's file did not show the Defendant had telephoned Officer Nicely. Relative to the outstanding restitution, fees, and court costs, she acknowledged the Defendant was declared indigent. She said, though, that the amounts owed were ordered by the trial court. She said her practice was to tell defendants to pay something each month to show an effort to fulfill the obligation, even if a payment was nominal. She agreed the Defendant was arrested on April 25, 2014. Officer Ladner said that the Defendant had sufficient time to find employment after his release and that many probationers had been convicted of theft. She noted employers received tax incentives to hire convicted felons and said the probation office was attempting to educate potential employers about those incentives.

On redirect examination, Officer Ladner testified that the Defendant was arrested and convicted of criminal offenses after being placed on probation in September 2012. On recross-examination, she agreed a new criminal charge was not the basis for the current revocation report. Relative to the Defendant's failure to report, she said that even if the Defendant had telephoned his probation officer, telephone calls did not equate to reporting to the office. She said probationers were required to report in person at the probation office. She said that finding the Defendant on April 16, 2014, constituted contact with the Defendant, but it did not constitute reporting. On further redirect examination, she said the only notation on the computer system relative to telephone calls was that an attempt to contact the Defendant occurred on March 1, 2014, but she conceded the possibility that the Defendant attempted to contact his probation officer.

Upon examination by the trial court, Officer Ladner testified that someone in the Defendant's circumstances who had been on probation previously would have been required and told when to report to a probation officer. She said that although no official payment plan existed for restitution, fees, and court costs, probation officers usually attempted to calculate a monthly payment. She said that most defendants paid less, which was satisfactory. She said, too, that if a defendant were unable to make a payment, she would not file a probation violation report as long as the defendant reported and maintained contact.

Probation Officer Mitch Webb testified for the defense that he participated in the April 16, 2013 home visit as a result of an unrelated investigation. He knew where the Defendant lived before April 16 and said he had been to the home three or four times previously. He agreed the Defendant's grandmother told him that the Defendant lived there. Officer Webb agreed that the Defendant was at the residence on April 16 and that the

-4-

Defendant had not engaged in criminal activity. Officer Webb searched the Defendant, his vehicle, and his home during his investigation and said he found nothing noteworthy.

On cross-examination, Officer Webb testified that he did not think he was aware the Defendant had not reported to his assigned probation officer. He did not recall the Defendant's stating that he had attempted to contact his probation officer. Officer Webb did not participate in the April 8, 2014 attempted home visit.

On redirect examination, Officer Webb testified that he told the Defendant to "get a hold [of] your officer, and go report." He said had the Defendant told him that he unsuccessfully attempted to contact his supervising officer, Officer Webb would have told the Defendant to report to the probation office because calling the office was not reporting. He did not request the Defendant undergo a drug screen.

The trial court revoked the Defendant's probation and ordered his sentence into execution. The court stated its general practice was to inform a defendant that he or she was required to report to an assigned probation officer. The court noted that in most cases, defendants were required to make payments toward court costs and fees and that if a defendant destroyed property, he or she was required to pay restitution. The court stated that probation officers usually assisted a defendant in determining a monthly payment. This appeal followed.

The Defendant contends that the trial court abused its discretion by revoking his probation based upon the evidence presented at the hearing, although he does not explain how the court's order is an abuse of discretion. He requests this court place him on community corrections or reduce his sentence to a partial probation revocation.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered.

T.C.A. §§ 40-35-308(a), (c), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that before the probation revocation report and warrant were issued in the present case, the Defendant had received the benefit of probation on two previous occasions. The Defendant violated the conditions of his release, and the trial court ordered the Defendant to spend ninety days and six months, respectively, in confinement. Upon release on February 13, 2014, the Defendant failed to report to his probation officer and to keep his probation officer informed of his residence. The probation officer unsuccessfully attempted to verify the Defendant's address on April 8, almost two months after the Defendant was released from confinement. Likewise, the Defendant failed to provide proof of employment or his attempts to find employment, which presumably impacted his ability to pay fees, court costs, and restitution. Officer Ladner testified that many probationers had difficulty finding employment after being convicted of theft but that the Defendant was not absolved of his obligation to attempt to find employment and to provide documentation reflecting his attempts. As a result, the record supports the court's finding that the Defendant violated the conditions of his probation. Once the court properly revoked the Defendant's probation, it had the authority to order the Defendant's sentence into execution. *See* T.C.A. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE